IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CLARENCE WAYNE FULLER,

    Petitioner,                       No. CIV S-05-0450 FCD EFB P

    vs.

D. L. RUNNELS, et al.,

    Respondents.              <u>FINDINGS & RECOMMENDATIONS</u>

                              /

       Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges a 2002 judgment of conviction entered against him in Sacramento County Superior Court on one count of battery resulting in serious bodily injury and one count of misdemeanor battery. He seeks relief on the grounds that: (1) his admission that he had suffered prior felony convictions was not voluntary and intelligent; (2) the jury did not make the proper findings to support his sentence enhancements; and (3) his sentence constitutes cruel and unusual punishment. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

////

////

1

## I. Procedural and Factual Background[1]

A jury convicted defendant Clarence Wayne Fuller of battery with serious bodily injury (Pen. Code, § 243, subd. (d); count one)[2] and misdemeanor battery (§ 242; count three). The jury deadlocked and a mistrial was declared on a count of assault by means likely to produce great bodily injury. (§ 245, subd. (a).) Defendant admitted five strike allegations (§§ 667, subds.(b)-(I), 1170.12) and three serious felony allegations (§ 667, subd. (a)), arising from Sacramento County and Shasta County convictions of attempted murder (§§ 187, 664), assault with a deadly weapon (§ 245, subd. (a)(1)), and three counts of robbery (§ 211). Defendant was sentenced to state prison for 40 years to life and to county jail for one year, concurrent.

On appeal, defendant contends (1) he was not properly advised of the consequences of admitting the serious felony and strike allegations, (2) the serious felony allegations must be vacated because count one is not a serious felony, and (3) his sentence constitutes cruel and unusual punishment. We shall affirm the judgment.

**FACTS**

On December 20, 2001, defendant approached a group of senior citizens at a senior residence in Sacramento. Defendant, who was intoxicated, argued with 63-year-old G.R. and hit him in the face. Eighty-one-year-old J.B. asked defendant to sit down, but he refused. Defendant entered an elevator and J.B. told him to come back out. At the time, J.B. did not believe that defendant lived in the building. J.B. repeatedly pushed the elevator call button and repeatedly told defendant to leave the elevator. Defendant finally said, "Okay," and J.B. turned away from the elevator. Using a closed fist, defendant hit J.B. in the back of the head, on the side of the head and on the jaw. J.B. extended his arms and moved toward defendant, who began to fall. Defendant grabbed at J.B.'s shirt and pulled him down to the floor. J.B. landed on his shoulder and became paralyzed. Defendant straddled J.B. and hit him several more times with a closed fist. J.B. suffered a bruise above his left eye and two bleeding lacerations to the back of his head that

---

[1] The following summary is drawn from the January 27, 2004 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pp. 1-3, filed in this court on September 15, 2005, as Resp.'s Lodg. Doc. 5. This court presumes that the state court's findings of fact are correct unless petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). Petitioner has not attempted to overcome the presumption with respect to the underlying events. The court will therefore rely on the state court's recitation of the facts.

[2] Further undesignated statutory references are to the Penal Code.

required sutures. An examination at a hospital revealed that his left shoulder was broken in two places. He will never regain full motion in his left shoulder.

## II. Analysis

### A. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

3

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

**B. Petitioner's Claims**

### 1. <u>Admission of Prior Felony Convictions</u>

Petitioner's first claim is that the trial court's failure to advise him of the sentencing consequences of admitting his prior felony convictions rendered his admissions involuntary. Pet. at 5. He argues that "the true findings on these allegations must be reversed." *Id.* The California Court of Appeal rejected this claim on direct appeal, reasoning as follows:

> Defendant contends, and the People concede, the trial court erred by failing to advise him of the direct consequences of admitting the serious felony and strike allegations.[3] Specifically, the court failed to advise him that the admissions would result in an indeterminate life term and a determinate term of 15 years. (*In re Yurko* (1974) 10 Cal.3d 857, 863-864, 112 Cal.Rptr. 513, 519 P.2d 561.) We accept the People's concession.
>
> The People contend the failure to advise of consequences was harmless. We agree.
>
> "'Unlike an uninformed waiver of the specified constitutional rights which renders a plea or admission involuntary and requires that it be set aside, an uninformed waiver based on the failure of the court to advise an accused of the [direct] consequences of an admission constitutes error which requires that the admission be set aside only if the error is prejudicial to the accused.' [Citation.] 'A showing of prejudice requires the appellant to demonstrate that it is reasonably probable he would not have entered his plea if he had been [properly advised].' [Citations.]" (*People v. Walker*

---

[3] Defendant's admission of the enhancing allegations was not a "plea of guilty or nolo contendere" within the meaning of section 1237.5. The statute's purpose, "'to promote judicial economy'" by "'screening out wholly frivolous guilty [and nolo contendere] plea appeals'" before time and money are spent on such matters as the preparation of the record on appeal and the appointment of appellate counsel (*People v. Mendez* (1999) 19 Cal.4th 1084, 1095, 81 Cal.Rptr.2d 301, 969 P.2d 146), would not be served where, as here, defendant is entitled to appeal from the judgment entered upon the jury verdict.

4

> (1991) 54 Cal.3d 1013, 1022-1023, 1 Cal.Rptr.2d 902, 819 P.2d 861 [restitution fine is direct consequence]; *italics added*; *see People v. Gurule* (2002) 28 Cal.4th 557, 635, 123 Cal.Rptr.2d 345, 51 P.3d 224.)
>
> Defendant has not attempted to make the required showing. Instead, he relies on *People v. Campbell* (1999) 76 Cal.App.4th 305, at page 310, 90 Cal.Rptr.2d 315, for the rule that "'*Yurko* error involving *Boykin/Tahl*[4] admonitions should be reviewed under the test used to determine the validity of guilty pleas under the federal Constitution. Under that test, a plea is valid if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances.' [Citation.]" This rule is inapplicable to this case, which does not involve a failure to advise the defendant of his constitutional rights.

Opinion at 3-4.

Due process requires that a plea be voluntarily and intelligently made. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). To that end, a knowing and voluntary guilty plea must include an explicit waiver by the criminal defendant of his constitutional rights against self-incrimination, right to trial by jury, and right of confrontation. *Id. See also Rodriquez v. Ricketts*, 798 F.2d 1250, 1254 (9th Cir. 1986). "Before a court may accept a defendant's guilty plea, the defendant must also be advised of the 'range of allowable punishment' that will result from his plea." *Torrey v. Estelle*, 842 F.2d 234, 235 (9th Cir. 1988). *See also Bernath v. Craven*, 506 F.2d 1244, 1245 (9th Cir. 1974) (in order to ensure that an admission is voluntary and knowing, the accused be "aware of the consequences of his admission, such as possible enhancement of punishment imposed for a separate criminal offence").

An admission of a prior conviction in state court which subjects the accused to an enhanced sentence is the functional equivalent of a guilty plea to a separate charge. *Wright v. Craven*, 461 F.2d 1109, 1109 (9th Cir. 1972). However, a trial court's failure to advise a defendant of the sentencing consequences of admitting prior convictions is harmless error if the

---

[4] *Boykin v. Alabama* (1969) 395 U.S. 238, 243-244 [23 L.Ed.2d 274]; *In re Tahl* (1969) 1 Cal.3d 122, 131-132, 81 Cal.Rptr. 577, 460 P.2d 449.

5

defendant does not dispute the validity of his prior convictions. *Lowell v. Prunty*, 91 F.3d 1358, 1359 (9th Cir. 1996) (per curiam) (trial court's failure to advise petitioner that admission of his prior convictions would add six years to his sentence harmless error because petitioner did not dispute the validity of his priors). Petitioner does not challenge the validity of his prior convictions, and there is no evidence they were invalid, constitutionally defective, or subject to legitimate challenge, or that the state would have been unable to prove them absent petitioner's admissions. Accordingly, the trial court's error in failing to advise petitioner of the sentencing consequences of admitting his prior convictions is harmless.[5]

The court also notes that petitioner does not state he was unaware of the sentencing consequences of admitting his prior convictions or that he would have refused to admit his prior convictions had he been properly advised. He merely asserts that he was not specifically advised of the consequences of his admissions. Under these circumstances, even assuming *arguendo* that clearly-established federal law required advice of the consequences of admitting priors, the California Court of Appeal reasonably found that petitioner had failed to demonstrate prejudice.

---

[5] As noted by the California Court of Appeal, the California Supreme Court has determined that "[u]nlike an uninformed waiver of the specified constitutional rights which renders a plea or admission involuntary and requires that it be set aside, an uninformed waiver based on the failure of the court to advise an accused of the consequences of an admission constitutes error which requires that the admission be set aside only if the error is prejudicial to the accused." *People v. Walker*, 54 Cal.3d 1013, 1022-23 (1991). "A showing of prejudice requires the appellant to demonstrate that it is reasonably probable he would not have entered his plea if he had been told about the [penalty]." *Id.* (citations omitted.) Similarly, Fed. R. Crim. P. 11(b)(1)(H) requires the district court, before accepting a plea of guilty or nolo contendere, to personally address the defendant in open court and inform him of, and determine that he understands, "any maximum possible penalty. . . ." However, a violation of Rule 11 is subject to harmless error analysis. Fed. R. Crim. P. 11(h) ("A variance from the requirements of this rule is harmless error if it does not affect substantial rights"). *See also United States v. Timmreck*, 441 U.S. 780, 784 (1979) (a technical violation of Rule 11 will not support relief in the absence of a showing of constitutional error or special prejudice); *United States v. Jaramillo-Suarez*, 857 F.2d 1368, 1370 (9th Cir. 1988) (same). Similar to the state system, a federal defendant must establish that he was actually unaware of the consequences of his plea, and that if he had been properly advised he would not have pleaded guilty. *Id.* The Ninth Circuit has recognized that "[t]he provisions of Rule 11 . . . were adopted by the Supreme Court as the measure of the validity of a guilty plea in *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), and *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)." *United States v. McWilliams*, 730 F.2d 1218, 1223 (9th Cir. 1984).

6

*Lowell*, 91 F.3d at 1359; *Steinsvik v. Vinzant*, 640 F.2d 949, 955-56 (9th Cir. 1980) (petitioner not prejudiced by failure to be advised of the sentencing consequences of pleading guilty to charge against him because he did not allege that he would not have pleaded guilty had he been properly advised); *Yellowwolf v. Morris*, 536 F.2d 813, 817 (9th Cir. 1976) (same). *Cf. Carter v. McCarthy*, 806 F.2d 1373, 1376-77 (9th Cir. 1986) (defendant's plea of guilty set aside where he was not advised of consequences of plea and he argued that he was unaware of the mandatory parole term and would not have pleaded guilty had he known). Here, there is no evidence petitioner would have insisted on a trial of his prior convictions if he had been advised of the consequences of his plea.

The decision of the California Court of Appeal rejecting petitioner's claim in this regard is not contrary to or an unreasonable application of federal law, nor is it based on an unreasonable determination of the facts of this case. Accordingly, this claim must be denied.

## 2. **Sentence Enhancement Findings**

Petitioner's next claim is that the three five-year sentencing enhancements for the infliction of great bodily injury should be stricken because the jury verdict did not make a finding, as to Count One, that he personally inflicted great bodily injury on the victim.[6] Pet. at 5. Petitioner notes that the jury verdict with respect to Count One did not state that he "personally inflicted the injury," but merely found that he committed "a 'battery' resulting in the infliction of serious bodily injury." *Id. See also* Clerk's Transcript on Appeal (CT) at 150. Petitioner argues that the victim provoked and aggravated the incident. Pet., Attach., Mem. of P. & A. (P&A), at 2; Pet., Exs. A, B. He contends that the situation involved "mutual combat." P&A at 3. Petitioner also points out that the jury instruction which required the jury to find that he personally inflicted great bodily injury was given only in connection with Count 2.

---

[6] Petitioner was charged in Count One with using force and violence on Julius Bertrand, resulting in the infliction of serious bodily injury; and in Count Two with assault on Julius Bertrand, in which he personally inflicted great bodily injury on Mr. Bertrand. *Id.* at 48-49.

7

*See* CT at 108. The California Court of Appeal rejected petitioner's claim in this regard, reasoning as follows:

> Defendant contends the three serious felony enhancements must be vacated because the jury failed to find that he personally inflicted serious bodily injury during the count one offense. (§ 243, subd. (d).) We find no prejudicial error.
>
> Section 243, subdivision (d) provides: "When a battery is committed against any person and serious bodily injury is inflicted on the person, the battery is punishable by imprisonment in a county jail not exceeding one year or imprisonment in the state prison for two, three, or four years."
>
> The term "serious bodily injury," as used in section 243, subdivision (d), is "essentially equivalent" to the element of "great bodily injury" used in other criminal statutes. (§ 1192.7, subd. (c)(8); *People v. Moore* (1992) 10 Cal.App.4th 1868, 1871, 13 Cal.Rptr.2d 713.) Violation of section 243, subdivision (d), is a serious felony where the defendant personally inflicts great bodily injury. (*Ibid.*)
>
> In this case, the amended information alleged that defendant violated section 243, subdivision (d), and that his violation constituted a serious felony. He does not dispute that this is, effectively, an allegation that he personally inflicted great bodily injury.
>
> However, he claims the enhancements must be reversed because the jury made no finding that he personally inflicted great bodily injury in the current crime. He relies on *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435], which held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.)
>
> The People contend the failure to submit the personal-infliction issue to the jury is harmless beyond a reasonable doubt. We agree.
>
> *Apprendi v. New Jersey, supra*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 is not inconsistent with finding harmless error. Apprendi stressed "the requirements of trying to a jury all facts necessary to constitute a statutory offense, and proving those facts beyond reasonable doubt." (*Id.* at pp. 483-484.) But "*Apprendi* did not recognize or create a structural error that would require per se reversal." (*U.S. v. Nealy* (11th Cir.2000) 232 F.3d 825, 829; cf. *People v. Sengpadychith* (2001) 26 Cal.4th 316, 320, 109 Cal.Rptr.2d 851, 27 P.3d 739 [*Apprendi* error may be evaluated to determine if harmless beyond a reasonable doubt]; *U.S. v.*

> *Garcia-Guizar* (9th Cir.2000) 234 F.3d 483, 488 [*accord*].)
>
> Defendant concedes that the evidence is "susceptible to the conclusion" that he "personally caused the injury[.]" In fact, the evidence shows he inflicted great bodily injury in two ways: by repeatedly hitting Bertrand in the head, causing him to suffer two lacerations; and by grabbing Bertrand as defendant fell to the ground, causing Bertrand to break his shoulder. No evidence suggested that anyone other than defendant personally inflicted any of these injuries. On this record, the trial court's failure to instruct the jury to determine whether defendant personally inflicted the count one injuries was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705]; *People v. Sengpadychith, supra*, 26 Cal.4th at p. 320, 109 Cal.Rptr.2d 851, 27 P.3d 739.)

Opinion at 4-6.

Petitioner is making both a jury instruction claim and a claim based on the *Apprendi* decision. Petitioner claims that his jurors should have been specifically instructed, as to Count One, that they were required to find he personally inflicted the injury on Mr. Bertrand. P&A at 1-2. He also claims that "any fact other than prior convictions that increase the maximum penalty for a crime must be charged in an indictment" (*Apprendi* claim). *Id.* at 1. In order to prevail on his jury instruction claim, petitioner must demonstrate that "the error had a substantial and injurious effect or influence in determining the jury's verdict." *Polk v. Sandoval*, 503 F.3d 903, 911 (9th Cir. 2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). *Apprendi* violations are also subject to harmless error analysis. *See Butler v. Curry*, 528 F.3d 624, 648 (9th Cir. 2008).

The California Court of Appeal concluded that any jury instruction and/or *Apprendi* errors were harmless because the evidence was overwhelming that petitioner personally caused the injuries to the victim. In order to grant habeas relief where a state court has determined that a constitutional error was harmless, a reviewing court must determine: (1) that the state court's decision was "contrary to" or an "unreasonable application" of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice from the constitutional error, as that term is defined in *Brecht*. *Mitchell v. Esparza*, 540 U.S. 12, 17-18 (2003)*; Inthavong v. LaMarque*,

9

420 F.3d 1055, 1059 (9th Cir. 2005). *See also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) ("in § 2254 proceedings a federal court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*, 507 U.S. 619, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman [v. California]*, 386 U.S. 18").

For the reasons set forth in the opinion of the California Court of Appeal, petitioner has failed to demonstrate that any error in failing to "submit the personal-infliction issue to the jury" resulted in prejudice. Opinion at 6. As explained by the state appellate court, the evidence was clear that petitioner personally caused great bodily injury to the victim. The fact that the victim attempted to defend himself and/or that his injuries resulted from falling to the ground after petitioner pulled him down and not by a separate distinct blow(s) from petitioner's hands does not change this result. There was no evidence "that anyone other than defendant personally inflicted any of these injuries" on Mr. Bertrand. *Id.* Accordingly, petitioner is not entitled to habeas relief on this claim. *Inthavong*, 420 F.3d at 1059.

### 3. Cruel and Unusual Punishment

Petitioner claims that his sentence of forty years to life in state prison pursuant to California's Three Strikes law constitutes cruel and unusual punishment. Petitioner raised this claim for the first time in his direct appeal. The California Court of Appeal rejected the claim, reasoning as follows:

> Defendant contends his sentence of 40 years to life subjects him to cruel and unusual punishment within the meaning of the Eighth Amendment to the United States Constitution and article I, section 17, of the California Constitution. Because he failed to raise the issue in the trial court, it is waived. (*People v. Kelley* (1997) 52 Cal.App.4th 568, 583, 60 Cal.Rptr.2d 653; *People v. DeJesus* (1995) 38 Cal.App.4th 1, 27, 44 Cal.Rptr.2d 796.)
> Defendant's sparse Eighth Amendment argument appears to rest primarily upon the Ninth Circuit's decision in *Andrade v. Attorney General of State of California* (9th Cir.2001) 270 F.3d 743, *reversed sub nom. Lockyer v. Andrade* (2003) 538 U.S. 63 [155

L.Ed.2d 144, 159].

However, in *Ewing v. California* (2003) 538 U.S. 11 [155 L.Ed.2d 108], the United States Supreme Court recently held that a third strike sentence of 25 years to life for grand theft of golf clubs (§ 484) did not violate the Eighth Amendment's prohibition on cruel and unusual punishment. (*Id.* at pp. 113-124.)

Defendant's present offenses are more serious than Ewing's, because they involve the infliction of serious bodily injury upon an elderly victim. Moreover, defendant's criminal history is more egregious than Ewing's, because it includes attempted murder and three robberies. (*Ewing v. California, supra*, 155 L.Ed.2d at pp. 115-116.)

"The California Constitution prohibits 'cruel or unusual punishment.' [Citation.] We construe this provision separately from its counterpart in the federal Constitution. [Citation.] [¶] A punishment may violate the California Constitution although not 'cruel or unusual' in its method, if 'it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' (*In re Lynch* (1972) 8 Cal.3d 410, 424, 105 Cal.Rptr. 217, 503 P.2d 921[ ], fn. omitted.) The *Lynch* court identified three techniques courts used to administer this rule. First, they examined the nature of the offense and the offender. (*Id.* at p. 425, 105 Cal.Rptr. 217, 503 P.2d 921.) Second, they compared the punishment with the penalty for more serious crimes in the same jurisdiction. (*Id.* at p. 426, 105 Cal.Rptr. 217, 503 P.2d 921.) Third, they compared the punishment to the penalty for the same offense in different jurisdictions. (*Id.* at p. 427, 105 Cal.Rptr. 217, 503 P.2d 921.)" (*People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1135-1136, 46 Cal.Rptr.2d 351.)

Regarding the offense and the offender, defendant claims he committed a "wobbler, meaning that in the eyes of the Legislature the offense is so trivial at times as to not warrant any prison sentence, and when it does, an upper term of only four years." He argues his crime "is not among those offenses considered most dangerous to society[,]" in that it is "neither serious nor violent."

Defendant's first argument fails because the "eyes of the Legislature" do not see his offense as trivial, or a wobbler, when a person with two or more prior serious or violent felony convictions commits it. (§§ 667, subds.(b)-(I).) Defendant's second argument was rejected in part II, ante, where we explained that battery with personal infliction of great bodily injury is, in fact, a serious felony. His sentence does not shock the conscience or offend fundamental notions of human dignity. *People v. Dillon* (1983) 34 Cal.3d 441, 487, fn. 38, 194 Cal.Rptr. 390, 668 P.2d 697; *In re Lynch, supra*, 8 Cal.3d at p. 424, 105 Cal.Rptr. 217, 503 P.2d 921.)

Regarding more serious crimes in California, defendant argues "[a] person who commits premeditated murder with a deadly weapon is eligible for parole for that offense two years and eight months sooner than [he] will be for this offense." However, defendant is not being punished "merely on the basis of his current offense but on the basis of his recidivist behavior." (*People v. Kinsey* (1995) 40 Cal.App.4th 1621, 1630, 47 Cal.Rptr.2d 769; *accord, People v. Cartwright, supra*, 39 Cal.App.4th at pp. 1136-1137, 46 Cal.Rptr.2d 351.) "'The basic fallacy of [defendant's] argument lies in his failure to acknowledge that he "is not subject to a life sentence merely on the basis of his current offense but on the basis of his recidivist behavior. Recidivism in the commission of multiple felonies poses a manifest danger to society[,] justifying the imposition of longer sentences for subsequent offenses. [Citations.]" [Citation.]'" (*People v. Mantanez* (2002) 98 Cal.App.4th 354, 366, 119 Cal.Rptr.2d 756, quoting *People v. Stone* (1999) 75 Cal.App.4th 707, 715, 89 Cal.Rptr.2d 401.)

Regarding punishment in other jurisdictions, defendant notes that, unlike the Three Strikes law, the "habitual offender provisions in most other states require that the current felony be of an aggravated type." Defendant's reliance on this factor is misplaced because, as we have explained, his current offense is "an aggravated type," specifically, a serious felony. (See part II, ante.)

Defendant claims that other than California, "there appears to be no state with a recidivist statute that requires such mandatory application and lengthy imprisonment regardless of any circumstances in mitigation[.]" However, the vice of his argument "is clear: for every offense, there necessarily is one or more of the states which punishes said offense most harshly." (*People v. Mantanez, supra*, 98 Cal.App.4th at p. 365, 119 Cal.Rptr.2d 756.) Under defendant's rationale, "federalism only extends to those within the extremes, and the extremes are automatically suspect." (*Ibid.*)

"That California's punishment scheme is among the most extreme does not compel the conclusion that it is unconstitutionally cruel or unusual. This state constitutional consideration does not require California to march in lockstep with other states in fashioning a penal code. It does not require 'conforming our Penal Code to the "majority rule" or the least common denominator of penalties nationwide.' [Citation.] Otherwise, California could never take the toughest stance against repeat offenders or any other type of criminal conduct." (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1516, 84 Cal.Rptr.2d 638; *see People v. Romero* (2002) 99 Cal.App.4th 1418, 1433, 122 Cal.Rptr.2d 399.)

In sum, defendant's prison sentence does not constitute cruel or unusual punishment.

Opinion at 7-10.

The United States Supreme Court has held that the Eighth Amendment includes a "narrow proportionality principle" that applies to terms of imprisonment. *See Harmelin v. Michigan*, 501 U.S. 957, 996 (1991) (Kennedy, J., concurring). *See also Taylor v. Lewis*, 460 F.3d 1093, 1097 (9th Cir. 2006). However, successful challenges in federal court to the proportionality of particular sentences are "exceedingly rare." *Solem v. Helm*, 463 U.S. 277, 289-90 (1983). *See also Ramirez v. Castro*, 365 F.3d 755, 775 (9th Cir. 2004). "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring) (citing *Solem v. Helm*). In *Lockyer v. Andrade*, the United States Supreme Court found that in addressing an Eighth Amendment challenge to a prison sentence, the "only relevant clearly established law amenable to [AEDPA's] 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear and applicable only in the 'exceedingly rare' and 'extreme' case." 538 U.S. at 73 (*citing Harmelin*, 501 U.S. 957; *Solem*, 463 U.S. 277; and *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)). In that case, the Supreme Court held that it was not an unreasonable application of clearly established federal law for the California Court of Appeal to affirm a "Three Strikes" sentence of two consecutive 25 year-to-life imprisonment terms for a petty theft with a prior conviction involving theft of $150.00 worth of videotapes. *Andrade*, 538 U.S. at 75; *see also Ewing v. California*, 538 U.S. 11, 29 (2003) (holding that a "Three Strikes" sentence of 25 years-to-life in prison imposed on a grand theft conviction involving the theft of three golf clubs from a pro shop was not grossly disproportionate and did not violate the Eighth Amendment).

In assessing the compliance of a non-capital sentence with the proportionality principle, a reviewing court must consider "objective factors" to the extent possible. *Solem*, 463 U.S. at 290.
////

Foremost among these factors are the severity of the penalty imposed and the gravity of the offense. "Comparisons among offenses can be made in light of, among other things, the harm caused or threatened to the victim or society, the culpability of the offender, and the absolute magnitude of the crime." *Taylor*, 460 F.3d at 1098.[7]

The court finds that in this case petitioner's sentence does not fall within the type of "exceedingly rare" circumstance that would support a finding that his sentence violates the Eighth Amendment. Petitioner's sentence of forty years to life is certainly a significant penalty. However, petitioner admitted five prior convictions, including three convictions for robbery, one conviction for attempted murder, and one conviction for assault with a deadly weapon. In *Harmelin*, the petitioner received a sentence of life without the possibility of parole for possessing 672 grams of cocaine. In light of the *Harmelin* decision, as well as the decisions in *Andrade* and *Ewing*, which imposed sentences of twenty-five years to life for petty theft convictions, a forty years to life sentence under the circumstances of this case is not grossly disproportionate. Because petitioner does not raise an inference of gross disproportionality, this court need not compare petitioner's sentence to the sentences of other defendants in other jurisdictions. This is not a case where "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Solem*, 463 U.S. at 1004-05.

---

[7] As noted in *Taylor*, the United States Supreme Court has also suggested that reviewing courts compare the sentences imposed on other criminals in the same jurisdiction, and also compare the sentences imposed for commission of the same crime in other jurisdictions. 460 F.3d at 1098 n.7. However,

> consideration of comparative factors may be unnecessary; the *Solem* Court "did not announce a rigid three-part test." *See Harmelin*, 501 U.S. at 1004, 111 S.Ct. 2680 (Kennedy, J., concurring). Rather, "intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 1004-05, 111 S.Ct. 2680; see also *Rummel v. Estelle*, 445 U.S. 263, 282, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) ("Absent a constitutionally imposed uniformity inimical to traditional notions of federalism, some State will always bear the distinction of treating particular offenders more severely than any other State.").

*Id.*

1 | The state court's reliance on *Andrade* and *Ewing* and its determination that petitioner's sentence
2 | did not violate the Eighth Amendment was not an unreasonable application of the Supreme
3 | Court's proportionality standard. Accordingly, this claim for relief should be denied.

**III.     Conclusion**

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  February 11, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE